USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 03/27/2026

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------- X
                                                                      :
UNITED STATES OF AMERICA,                                             :
                                                                      :
                                                                      :
                                                                      :
                                                                      :          24-cr-417 (LJL)
            -v-                                                       :
                                                                      :            ORDER
BRIAN HERNANDEZ,                                                      :
                                                                      :
                        Defendant.                                    :
                                                                      :
------------------------------------------------------------------- X

LEWIS J. LIMAN, United States District Judge:

      Trial in this matter is scheduled for Monday, March 30, 2026. In advance of trial, the Court attaches the voir dire it will use.

      SO ORDERED.

Dated: March 27, 2026
      New York, New York

                                              LEWIS J. LIMAN
                                   United States District Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

v.

BRIAN HERNANDEZ,
    a/k/a "Malakai,"
    a/k/a "Mali Black,"

        Defendant.

24 Cr. 417 (LJL)

Examination of
Prospective
Jurors

## I.      Introduction

Members of the panel, good morning and welcome to the United States District Court for the Southern District of New York. My name is Lewis Liman and I will be the presiding judge at this trial. My courtroom deputy is Matthew Fishman, who is sitting in front of me. With us in this room are attorneys for the government and their staff, attorneys for the defense and their staff, the defendant, and other individuals assisting the Court in this proceeding.

Before we get started, I want to thank you for being here. Your presence reflects your serious commitment to your civic responsibilities. I recognize that some of you are inconvenienced by this service. Jury service, however, is one of the highest and most important duties of a citizen of the United States. As the Supreme Court has recognized, "Jury service preserves the democratic element of the law, as it guards the rights of the parties and ensures continued acceptance of the laws by all of the people. It affords ordinary citizens a valuable opportunity to participate in a process of government, an experience fostering, one hopes, a respect for law. Indeed, with the exception of voting, for most citizens the honor and privilege of jury

1

duty is their most significant opportunity to participate in the democratic process." [*Powers v. Ohio*, 499 U.S. 400, 407 (1991) (citations and internal quotations marks omitted).] Our system of justice depends on you.

In a few minutes, if you have an extraordinary personal hardship that prevents you from serving in this case, you will have an opportunity to bring that to my attention. I emphasize the word "extraordinary" because, as I said, I know that many of you have jobs or other places that you would rather be. Unfortunately, it would be too hard for us to seat any jury at all if that were enough to excuse you from service. The parties would not get a fair trial. The hardship must be extraordinary for you to be excused. So I appreciate your full cooperation.

Our purpose today is to make sure that we have a jury of citizens who will decide the issues in this case both fairly and impartially, and without any bias or prejudice in favor of, or against, either side. In order to do that, I am going to ask certain questions of you—questions about your personal background, your family, your beliefs and experiences, and things of that nature.

You should understand that my questioning is not intended to pry into your lives, but to make sure that we select fair and impartial jurors, who can listen to the evidence with an open mind, and decide the issues in this case based only on the sworn testimony given in this courtroom, on whatever exhibits may be received in evidence, and on my instructions as to the law. If at any time you feel uncomfortable for any reason in answering a question in front of other jurors, just tell me that you would like to discuss the matter at the bench at sidebar, and I will discuss it with you outside the presence of the other jurors.

From your answers to my questions, I will be able to determine whether you should be excused "for cause"—that means, for a good reason. Your answers will also allow the parties to

make informed use of their peremptory challenges. Peremptory challenges give each party the right to excuse a certain number of jurors without giving any reason for doing so.

My questions to you, and your answers to them, are not evidence in this case, and you should not regard them as having any bearing in this case. That said, it is very important that you not say in open court anything about the parties in this case or about any other matter that might affect the open-mindedness and fairness of the other jurors. If there are any matters that you feel should be disclosed to me that might influence the other jurors, or any matters of a sensitive nature, you should ask to approach the bench to discuss them. If you are excused, do not consider that a reflection on you personally. This is all part of our system of justice, which is intended to provide all parties with a fair and impartial jury. You will have done your duty by your presence here today and your readiness to serve if chosen.

## II.    Trial Schedule

Let me now tell you a little more about our schedule. I expect to complete jury selection promptly today. Trial will then begin. We will sit every weekday until trial is over. The parties have advised me that they expect that this trial to be over by the end of this week. I share that expectation. Obviously, of course, it is possible that the trial could last a little longer, although that is unlikely.

Each day, the jury sits between 9:30 a.m. and 5:00 p.m. We try to make the experience as pleasant as possible. Each day, a light breakfast is available before trial in the jury room at 8:30 a.m. for jurors who want it. If you are selected to serve, I will encourage you to arrive early— or at least on time—so as not to delay the other jurors and participants in the trial. We will take a lunch break at approximately 1:00 p.m., will take a short mid-morning comfort break, and will

take a midday comfort break at which refreshments will be served.  I make every effort to move trials along promptly and to make efficient use of your time.  As I said earlier, following the trial, you would be excused from your jury service.  Those of you who are not chosen to sit on this case will be eligible to be chosen to serve on the jury in a different case.

### III.    Functions of the Judge and Jury

Finally, before I ask you specific questions, let me explain a few basic rules of law that must guide all of us during this trial.  The function of the jury is to decide questions of fact.  You who are chosen as jurors will be the only judges of the facts, and nothing the Court or the parties say or do may in any way intrude on your role as the exclusive fact-finders, based only on the evidence presented during the trial.  When it comes to the law, as distinguished from the facts, however, you must take your instructions from the Court—that is, from me—and you are bound by those instructions.  You may not substitute your own ideas of what the law is or what you think it should be.

Let me add that, during the course of the trial, you will receive all the evidence you may properly consider to decide the case.  Because of this, unless and until you are excused as a juror, you should not attempt to gather any information on your own relating to the case.  Do not engage in any outside reading on this case; do not attempt to visit any places mentioned in the case; do not use the internet (including Google, Facebook, "X", Threads, or any other social media site or website) to learn anything about the case or anyone involved in the case.  Do not do research of any nature or talk to anyone about the facts of the case or anyone involved in it.  The reason for these rules, as I am sure you understand, is that your decision in this case must be made solely on the evidence presented at the trial, or the lack of evidence.

## IV.    Oath

I will now begin asking you questions. I request, however, that all of you first stand up so that the Clerk can give you the oath that you will respond truthfully and completely to my questions.  [Clerk administers the oath to the entire panel.]

## V.    Introduction to Questions/Bench Conferences

Under your oath you are required to give fair and truthful answers to the questions that I will ask.  However, it is very important that you not say anything in open court about the parties in this case or about any matter that might tend to impair the open-mindedness and fairness of the other members of the panel.  If there are matters that you believe you should disclose but that might tend to influence the other jurors, you should tell me that you would like to discuss the matters at the bench at sidebar.  Also, if any questions call for personal information that you would rather not mention in front of everyone in court, simply tell me that you would like to discuss them at the bench.  Please do not discuss anything about the facts of this case or the allegations of this case with your fellow jurors.

I have no personal knowledge of the facts of this case, and nothing that I say constitutes evidence.  However, so that you will understand the reasons for certain questions that will be put to you, and to help you to help us determine whether you should serve as a juror in this case, I will give you some brief background about this case.

## VI.    Summary of the Case

So you can understand the reason for the questions I'll be asking you, I want to tell you briefly about the charges in this criminal case.  The defendant, Brian Hernandez, has been charged with the commission of certain federal crimes in a document called an Indictment filed

5

by a grand jury sitting in this District.   The Indictment is not evidence itself.   It simply contains the charges that the government is required to prove beyond a reasonable doubt.  The defendant has pleaded not guilty to those charges and is presumed to be innocent.  That presumption of innocence remains with him now, and throughout the trial.  That presumption of innocence is removed only if, at the conclusion of the case, after you have heard all the evidence and arguments and my instructions on the law and have deliberated, you decide the government has proven the defendant's guilt beyond a reasonable doubt.  You must always keep in mind that the defendant is presumed innocent, that he has entered a plea of not guilty to the charges against him, and that the government must prove beyond a reasonable doubt the charges in the Indictment.   I would like to summarize the charges in this case in order to give you a legal framework as you listen to the evidence for what you will ultimately be asked to do at the end of the trial.   The Indictment contains the following counts or charges:

Count One charges that in or about December 2023, Mr. Hernandez conspired with other people to commit witness retaliation.

Counts Two, Three, and Four charge that on December 3, 2023, he retaliated against the witness by attempting to murder him, by causing him serious bodily injury, and by taking action harmful to him.

## VII.    Filling the Box

We will be selecting 14 jurors for this case.  To do that, we need to qualify 34 prospective jurors; I will start by questioning the people in seat numbers 1–[X], but I am confident that I will be questioning others beyond these individuals.  Please listen carefully as I explain how we are going to proceed.

To begin, I am going to ask Juror Number One, [Mr./Ms. _____], each of the questions

on the form, except for the questions on the last page under the heading "Questions for Individual Prospective Jurors," which we will get to later.  Even though I will be speaking directly to Juror Number One at that time, all of you sitting in this courtroom, should be paying close attention and following along on your questionnaire.  If your answer to any question I ask to Juror Number One is "yes," please use your pen to circle the number of that question.  Do not write your name or make any other marks on the questionnaire; the only marks you should make are circles around the questions for which the answer is "yes."

When I finish going through the questions with Juror Number One, I will ask Juror Number Two, [Mr./Ms. _____], if they had any "yes" answers to any of the questions.  After doing so with Juror Number Two, I will do the same for Juror Number Three and so on down the line.  After Juror Number One, however, I will not re-read the questions aloud.  That is why it is very important that you listen carefully the first time and that, as I read each question to Juror Number One, you circle the number of the question if your answer is "yes."

To those individuals who are not among the first 34 people selected, you should also listen carefully to my questions and follow along, and also circle the number of any question to which you have a yes answer, because some of you may be called upon to take the place of a prospective juror who has been excused for cause.  If you do end up taking a seat, I will ask you to quickly tell me if you have any affirmative, or yes, answers to the questions I have asked.

After each juror tells me whether they have any "yes" answers to these questions, I will ask that juror to tell me what those answers are.  If there are matters that you believe you should disclose but that might tend to influence the other jurors, I will have you approach the bench to discuss them.  Also, if any questions call for personal information that you would rather not mention in front of everyone in court, simply tell me that you would like to approach the bench.

Once I have resolved all the challenges for cause, I will ask each prospective juror the background questions at the end of the questionnaire; and the parties will then exercise their peremptory challenges.  14 of the 34 will be left, and they will be our jurors.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|   |   |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br><br>BRIAN HERNANDEZ,<br>a/k/a "Malakai,"<br>a/k/a "Mali Black,"<br><br>Defendant. | 24 Cr. 417 (LJL)<br><br><br>Examination of<br>Prospective<br>Jurors |

LEWIS J. LIMAN, District Judge:

## **Questions for Jurors**

A. Knowledge Regarding the Instant Proceeding

1. Do any of you believe you have personal knowledge of the charges contained in the Indictment as I have described them?

2. The defendant in this case is Brian Hernandez, who goes by "Malakai" and "Mali Black." Do any of you know, or have you had any dealings, directly or indirectly, with Mr. Hernandez, or with any relative, friend or associate of Mr. Hernandez?

3. A defendant in a criminal case has a constitutional right to represent himself in the Court and act as his own attorney and to waive his right to a lawyer.  Mr. Hernandez has chosen to do that in this case, and he will be representing himself in this trial and acting as his own attorney during the proceedings in this case. Although Mr. Hernandez is representing himself, he will be assisted by a lawyer, Aaron Mysliwiec, who will be what is called his "standby counsel." The role of standby counsel is to help explain the rules of the courtroom protocol and to steer a

9

defendant through the basic procedures of trial. Mr. Mysliwiec will be assisted by Paralegal Nina Eyres   Do any of you know Mr. Mysliewiec or Ms. Eyres?  Have you or your family members or close friends had any dealings, either directly or indirectly, with Mr. Mysliewiec or Ms. Eyres, or any lawyer associated with them?

4. The government is represented here, as in all cases where it is a party before this Court, by the United States Attorney for the Southern District of New York, who is Jay Clayton.  The conduct of the trial will be in the immediate charge of Assistant United States Attorneys Lisa Daniels, William Stone, and Frank Balsamello who will be assisted by paralegal Ananya Sankar.  Do any of you know Mr. Clayton or any of these Assistant U.S. Attorneys or Ms. Sankar?  Have you or your family members or close friends had any dealings either directly or indirectly with them?

5. The prosecutors will be assisted by Special Agent Sarah Van Fossen of the Federal Bureau of Investigation. Do any of you know Ms. Van Fossen?  Have you or your family members or close friends had any dealings either directly or indirectly with Ms. Van Fossen?

6. Have you or your family members or close friends had any dealings either directly or indirectly with the United States Attorney's Office, the Federal Bureau of Investigation, the Drug Enforcement Administration, or the federal Bureau of Prisons?

7. I will now read a list of names of individuals whose names may be mentioned during the trial, or who may be witnesses in this case.  They are:

    a.  Ramon Rodriguez, a/k/a "Pollo"

    b.  Anthony Castillo, a/k/a "Tony"

    c.   Wander Rivera, a/k/a "Cirujano," a/k/a "Ciru"

    d.   Yeltsin Beltran, a/k/a "Yells"

    e.   Boris Beltran, a/k/a "Bebe"

    f.   Jowenky Nunez, Jr., a/k/a "Juju"

    g.   MDC inmates known as

        i.   "Image"

       ii.   "Colombia"

      iii.   "Grande"

      iv.   "Juice"

       v.   "Buca"

      vi.   "Saint"

     vii.   "Keem"

    h.   Lucas Chajecki, a/k/a "Luc Luc"

    i.   Rawson Lemons

    j.   Byron Bell

    k.   Rysheen Summers

    l.   Sydney Scales, a/k/a "Mo Black"

    m.   Alex Llerena-Salazar

    n.   Robert Beddoe

    o.   Olivia Sebade

    p.   Mainray Ho

Do any of you know any of these people?  Have you had any dealings either directly or indirectly with any of these individuals?  To your knowledge, have your relatives,

11

friends, associates, employers or employees had any dealings with any of these individuals?

8. The conduct at issue in this case took place in various locations including:

    a.   Metropolitan Detention Center, Brooklyn, New York ("MDC")

    b.   Essex County Correctional Facility ("Esssex")

    c.   Hudson County Correctional Facility ("Hudson")

Are any of you familiar with those areas?

B. Relationship with Government

9. Do any of you know, or have any association—professional, business, or social, direct or indirect—with any member of the staff of the United States Attorney's Office for the Southern District of New York, the FBI, the DEA or the BOP? Is any member of your family employed by any law enforcement agency, whether federal, state, or local?

10. Have any of you, either through any experience you have had or anything you have seen or read, developed any bias, prejudice or other feelings for or against the United States Attorney's Office, the FBI, the BOP or any other law enforcement agency? Does anyone have any personal feelings or experiences concerning the U.S. Attorneys Office, the FBI, DEA, or BOP that would in any way affect his or her ability to be fair and impartial in this case?

11. Have you, or has any member of your family, either as an individual, or in the course of business, ever been a party to any legal action or dispute with the United States, or with any of the officers, departments, agencies, or employees of the United States, including the Internal Revenue Service?

12. Have you ever been a witness or a complainant in any federal or state prosecution?

13. Are you, or is any member of your family, now under subpoena or, to your knowledge, about to be subpoenaed in any criminal case?

14. Have you, or has any member of your family, any associate or close friend, ever been charged with a crime?

15. Have you, or have any of your relatives, associates, or close friends ever been the subject of any investigation or accusation by any federal or state grand jury, or by a Congressional committee?

16. Have you, or any of your close friends or relatives, ever been a victim of a crime?

C. Ability to Render a Fair and Impartial Verdict

17. During the trial, you will hear evidence concerning a physical attack, stabbing, and slashing. Would the fact that the charges involve allegations of that kind of violence affect your ability to be fair and impartial?

18. The government alleges that the attack was retaliation against a person for cooperating and being a witness for the government in another case. Would the fact that the charges involve alleged witness retaliation affect your ability to be fair and impartial?

19. Do any of you believe that it should not be a crime for a person to retaliate against witnesses, including through violence, or that the laws governing such crimes should not be enforced?

20. Has any juror, or juror's close friend or relative, been involved—as defendant, victim, or any other way—in a case involving physical violence?

21. You may hear testimony in this case about gangs. Has any juror, or any juror's

13

relative or close friend, had any personal experience with a gang, such as the Bloods, the Latin Kings, the Trinitarios, or other similar gangs?

22. I have instructed you that an indictment is not evidence and that the defendant is presumed innocent. Does any juror feel that a defendant is probably guilty of something by the mere fact that he has been charged and brought before the Court for trial?

23. As I mentioned, Mr. Hernandez will be representing himself in Court and act as his own attorney. You should draw no inference from the fact he has chosen to represent himself, as is his right. Do any of you have any opinions or beliefs about a defendant who chooses to represent himself that might prevent you from being fair and impartial in this case?

D. Media Coverage

24. Have any of you read or seen anything—in the newspaper, on the Internet, on TV, or elsewhere—about this case?

25. This trial could be reported in the media, as many trials are. If it does, will each of you follow my instruction that you should absolutely avoid reading, watching, or listening to media reports concerning the case—including coverage of the case in social media (like Facebook or X/Twitter), and on any blogs—until after this case is over? If not, please raise your hand.

E. Witnesses

26. The government witnesses in this case will include at least one law enforcement officer. That fact that a person is employed as a law enforcement officer by the government does not mean that their testimony is deserving of more or less

14

consideration, or greater or lesser weight, than that of an ordinary witness.  Would any of you be more likely to believe a witness merely because he or she is an officer of a law enforcement agency?  Would any of you be less likely to believe a witness merely because he or she is an officer of a law enforcement agency?

27. The government will also call cooperating witnesses, meaning people who pled guilty to crimes and agreed to testify in the hope that they will get leniency in their own cases.  The government is permitted to enter into these kinds of agreements and is entitled to call cooperating witnesses.  Do any of you have any opinion about cooperating witnesses that might prevent you from being fair and impartial in this case? Would any of you be unable to evaluate their testimony fairly and impartially?

28. Because a defendant is presumed innocent, and because he does not have a burden to prove that he is not guilty, a defendant in a criminal case has the right not to testify.  However, if the defendant were to testify, would any of you be unable to evaluate his testimony fairly and impartially?

F.   Investigative Techniques

29. Would any of you be unable to follow the Court's instructions that the government is not required to use any particular investigating technique in presenting evidence of a crime?

30. The defendant is charged with acting with others in committing some of the alleged crimes.  You may not draw any inference, favorable or unfavorable, towards the government or the defendant from that fact.  You also may not speculate as to the reason why other people are not on trial at this time.  Is there any juror who cannot

follow this instruction or who for this reason would have difficulty rendering a fair and impartial verdict?

G.  Function of the Court and Jury

31. The function of the jury is to decide questions of fact.  You are the sole judge of the facts.  When it comes to the law, however, you are to take your instructions from the Court, and you are bound by those instructions.  You may not substitute your own notions of what the law is, or what you think it should be.  Do you have any bias or prejudice, or any philosophical or religious belief, that might prevent or hinder him or her from accepting the instructions of law that I will give you in this case?

32. Will you be unable to follow these instructions that I will give you:

   a.  The defendant is entitled to individual consideration, and the mere fact that a defendant has associated with others who may have engaged in criminal activity does not itself make that defendant guilty;

   b.  The defendant is presumed to be innocent and has no obligation to prove his innocence; rather, the task of proving guilt beyond a reasonable doubt rests exclusively with the government;

   c.  A defendant is under no obligation to testify and you may not draw any inference against the defendant because he has elected not to testify.

   d.  The question of punishment is for the Court alone to decide, and the question of possible punishment must not enter into your deliberations as to whether the defendant is guilty or not guilty of the crime charged.

   e.  Sympathy or empathy must not enter into the deliberations of the jurors as

to whether the defendant is guilty or not guilty, and only the evidence or lack of evidence produced here in Court may be used by you to determine whether the defendant is guilty or not guilty of the crime charged.

f. You are to make the decision solely on the evidence, or lack of evidence, presented a trial and you may not during the course of the trial do any investigation on your own of the facts of the trial or talk to anyone about the evidence at trial, including with your fellow jurors with whom you may discuss the evidence only after you have retired to deliberate.

33. You may feel that it is unpleasant to find a person guilty of committing a crime. Would any of you feel that, even if the evidence established the defendant's guilt beyond a reasonable doubt, you might not be able to render a guilty verdict for reasons unrelated to the law and the evidence?

34. If the evidence failed to convince you beyond a reasonable doubt as to the defendant's guilt, would any of you hesitate in returning a verdict of not guilty

H. <u>Other Biases</u>

35. Would you be unable, or find it difficult, to accept the proposition that any bias, prejudice, or preconceived notions, of any kind, that you may have about any group of people—whether based on their race, ethnicity, national origin, age, gender, sexual orientation, or other characteristic—may not factor into your deliberations or decision in this case?

I. <u>Other Questions</u>

36. Do any of you have problems with your hearing or vision that would prevent you from giving full attention to all of the evidence at this trial?

17

37. Are any of you taking any medication, or do any of you have any medical condition, that would prevent you from giving full attention to all of the evidence at this trial?

38. Do any of you have any difficulty in reading or understanding English?

39. Do any of you have any religious, philosophical or other beliefs that would make you unable to render a verdict in this criminal case?

40. In these questions, I have tried to direct your attention to possible reasons why you might not be able to sit as a fair and impartial juror.  Apart from any prior question, does any juror have the slightest doubt in his or her mind, for any reason whatsoever, that he or she will not be able to serve in this case, to do so conscientiously, fairly, and impartially, and to render a true and just verdict without fear, favor, sympathy, bias, or prejudice—and according to the law as it will be explained to you?

We are now going to turn to the page of the questionnaire headed: "Questions for Individual Prospective Jurors." We will go in order, from Juror #1 through Juror #34. When it is your turn, the microphone will be brought over to you. Please answer the questions on that page. It shouldn't take you very long. To help guide you as to the length of the type of responses I have in mind, I will briefly illustrate the questions myself using more or less the answers that I would give were I in your seat.

#### Questions for Individual Prospective Jurors

1. What is your name and in what county have you lived in the past five years.

2. Where else have you lived in the past ten years?

3. How old are you?

4. What level of school did you reach?

5. What kind of work do you do?

6. What do you do for a living?

7. Have you ever served in the military?

8. Who are the members of your household? What do they do? If any persons are retired, what did they do before retiring? If you have any children, how old are they?

9. What newspapers or magazines do you read? How often do you read them?

10. Please list the television programs you usually watch, the social media websites you visit on a regular basis, websites you visit on a regular basis, and any hobbies or activities you participate in, including organizations, associations, or clubs.

11. Have you ever, at any time, served as a member of a grand jury, whether in federal, state, county or city court? If so, when and where did you serve? If so, were you the

foreperson?

12. Have you ever served as a juror in any court?  If so, when, and in what court did you serve, and was it a civil or criminal case?  What was the nature of the case?  Without saying what it was, did the jury reach a verdict?  Did you think the outcome was fair?

13. Have any of you, or any of your relatives or close friends, ever been involved or appeared as a witness in any investigation by a federal or state grand jury, or by a Congressional or state legislative committee, licensing authority, or governmental agency?  Have you, or anyone close to you, ever been questioned in any matter by a federal, state, or local law enforcement agency?

### VIII.   Wrap Up

From time to time during the trial it may become necessary for me to talk with Mr. Hernandez out of the hearing of the jury by calling a recess.  Please understand that while you are waiting, we are working.  The purpose of any conference outside your viewing is not to keep relevant information from you, but to decide certain procedural issues or how certain evidence is to be treated under the rules of evidence and to avoid confusion and error.

We will, of course, do what we can to keep the number and length of these conferences to a minimum. I may not always grant the request of Mr. Hernandez or an attorney for a conference. Do not consider my granting or denying a request for a conference as any indication of my opinion of the case or of what your verdict should be.

Right now, we will go outside this room and discuss the challenges to your service that the parties may have.  We should return within twenty minutes.  Feel free to get up and stretch and relax.  But please do not talk about this case.  As I will tell the jurors who sit in this case, it is very important to keep an open mind and not to talk about this case until you have heard all of the evidence, I have instructed you on the law, and you return to the jury room to begin your deliberations.

*[Discuss and resolve for-cause challenges at sidebar.]*

*[Replace struck jurors.  Ask replacement jurors if they have any affirmative answers to the questionnaire.  Resolve any additional for-cause challenges.]*

*[Undertake six rounds of peremptory challenges.  In the first four rounds, the Defendant may make 2 challenges in each round, the Government one.  In the final two rounds, the Defendant may make one challenge and the Government may make one.  In addition, both parties will get two additional challenges each to exercise for the alternate pool*

*of jurors.]*

*[Leaves a Jury of 12 with two alternates]*

*[To the attorneys:*

Does either side have any objection to the procedures used to choose the jury in this case?]

*[Return to open court]*

Ladies and gentlemen, if you are not seated on the jury panel, I thank you for your service. Please return your questionnaire and retrieve your jury card from Mr. Fishman.  You can then return to the jury assembly room.

### IX.    Second Oath

Mr. Fishman will now swear in the jury.

*[After the oath, the Court will give the following preliminary instructions to the jury.]*

### X.    Preliminary Instructions to Jury

Members of the jury, now that you have been sworn, I will give you some preliminary instructions to guide you in your participation in the trial.

### A. Impartiality

To begin with, you are here to administer justice in this case according to the law and the evidence.  You are to perform this task with complete fairness and impartiality, and without bias, prejudice, or sympathy for or against any of the parties.

### B. Finding the Facts

It will be your duty to find from the evidence what the facts are.  You and you alone will be the judges of the facts.  You will then have to apply those facts to the law as the Court will give

it to you.  You must follow that law whether you agree with it or not.  Nothing the Court may say or do during the trial is intended to indicate, or should be taken by you as indicating, what your verdict should be.

The evidence from which you will find the facts will consist of the testimony of witnesses, documents, and other things received into the record as exhibits, as well as any facts that the parties agree to or stipulate to or that the Court may instruct you to find.
Certain things are not evidence and must not be considered by you.  I will list them for you now:

First, statements, arguments, and questions by lawyers are not evidence.  Nor are my own statements to you evidence.  Only the answers given by the witnesses and the documents admitted as exhibits are evidence.

Second, objections to questions are not evidence.  The lawyers have an obligation to their clients to make an objection when they believe evidence being offered is improper under the rules of evidence.  You should not be influenced by the Court's ruling on an objection.  If the objection is sustained, ignore the question.  If it is overruled, treat the answer like any other.  If you are instructed that some item of evidence is received for a limited purpose only, you must follow that instruction.

Third, testimony that the Court has excluded or told you to disregard is not evidence and must not be considered.

Finally, anything you may have seen or heard outside the courtroom is not evidence and must be disregarded.  You are to decide the case solely on the evidence presented here in the courtroom.

When you are determining the facts, keep in mind that there are two kinds of evidence: direct and circumstantial.  Direct evidence is direct proof of a fact, such as the testimony of an

eyewitness. Circumstantial evidence is proof of facts from which you may infer or conclude that other facts exist. The word "infer"—or the expression "to draw an inference"—means to find that a fact exists from proof of another fact. An inference is to be drawn only if it is logical and reasonable to do so, and not by speculation or guesswork.

In deciding whether to draw an inference, you must look at and consider all the facts in the light of reason, common sense, and experience. Whether a given inference is or is not to be drawn is entirely a matter for you, the jury, to decide. Circumstantial evidence does not necessarily prove less than direct evidence, nor does it necessarily prove more.

Here is an example to help you think about the difference between direct and circumstantial evidence. Assume that when you came into the Courthouse this morning the sun was shining and it was a nice day outdoors. Also assume that the courtroom blinds were drawn and you could not look outside. Assume further that, as you were sitting here, someone walked in with an umbrella that was dripping wet and then, a few moments later, somebody else walked in with a raincoat that was also dripping wet.

Now, because you could not look outside the courtroom and you could not see whether it was raining, and because no witness has testified that it is raining, you would have no direct evidence of the fact that it was raining. But, on the combination of facts that I have asked you to assume, it would be reasonable and logical for you to conclude that it was raining.

That is all there is to circumstantial evidence. You infer on the basis of reason, experience, and common sense from one established fact the existence or the nonexistence of some other fact. I will give you further instructions on these as well as other matters at the end of the case, but keep in mind that you may consider both kinds of evidence.

**C. Credibility of Witnesses**

One of your most important tasks as jurors is to evaluate the credibility of the witnesses who will testify before you—that is, how truthful and believable they are. Listen carefully as each witness testifies during both direct and cross examination and consider whether the witness is telling the truth. It will be up to you to decide which witnesses to believe, which witnesses not to believe, and how much of any witness's testimony to accept or reject.

Now, how do you decide what to believe and what not to believe? You are to listen to the witnesses, observe their testimony, and then decide as you would decide such questions in your own life. Did they know what they were talking about? Were they candid, honest, open, and truthful? Did they have a reason to falsify, exaggerate, or distort their testimony? Sometimes it is not what a witness says, but how he or she says it, that may give you a clue as to whether or not to accept that witness's version of an incident or an event as credible or believable.

In short, the way a witness testifies may play an important part in your reaching a judgment as to whether or not you can accept the witness's testimony as reliable.

### D. Conduct as Jurors

Now, a few words about your conduct as jurors.

First, during the trial, you are not to discuss the case with anyone, nor are you to permit anyone to discuss it with you. This includes posting anything on the Internet about the case, whether it be on personal blogs, Facebook, or "X" or Threads. Until you retire to the jury room at the end of the case to deliberate, you simply are not to talk about this case with anyone—including your spouse or partner, family, or close friends. Do not even discuss the case with each other until you begin your actual deliberations at the end of the trial.

I know that many of you use cell phones, smart phones, social media, the Internet and other tools of technology. You must not use these tools to communicate electronically with anyone

about the case. This includes your family and friends. You may not communicate with anyone about the case on your cell phone, which includes smart phones, through e-mail, text messaging, "X", Threads, any blog or website, any Internet chat room, or by way of any other social networking websites, including Facebook, LinkedIn, and YouTube.

Second, please do not, while you are serving as jurors in this trial, have any conversations with the parties, the attorneys, or any witnesses in this case, whether in the courtroom, in the hallways, in the elevators, outside, or anywhere else. By this, I mean not only to avoid talking about the case; do not talk at all, even to say "good morning" or to acknowledge any of these people. Someone seeing a juror in conversation with a party, lawyer, or witness might think that something improper was being discussed. To avoid even the appearance of impropriety, then, avoid any such contact or conversations. So I can tell you that, when the parties, lawyers, or witnesses pass you in the halls without even acknowledging your presence, they do not mean to be rude—they are simply following my instruction.

Third, do not read or listen to anything outside the courtroom that relates to this case in any way. Similarly, you are not to allow anyone to speak to you about this case. If you are approached by anyone to speak about it, politely but firmly tell them that the judge has directed you not to do so. If any person seeks to contact you about this case, you are required to report the incident promptly to me by sending me a note through my courtroom deputy, Mr. Fishman.

Also, be sure that I am informed if any person that you know comes into this courtroom. This is a public trial so this could happen. But it is important that you do not hear from them what may have happened in the court while the jury was not present. If you should see a friend or relative come into court, please send me a note through Mr. Fishman at your first opportunity. Fourth, do not try to do any research or make any investigation about the case or the issues

26

presented by this case.  For example, do not go onto the Internet tonight and research any matters relating to this case.  Do not call up your lawyer friends to ask about the type of matters at issue in this case.

Finally, do not form any opinion until all the evidence is in.  A case can be presented only step by step, witness by witness, until all the evidence is before you.  Keep an open mind and do not discuss the facts of the case with one another until you start your deliberations at the end of the case.

### E.  Notes

You are permitted to take notes during the trial.  Mr. Fishman has given each of you a notepad and pen.  Please write your name on the cover of the pad.  If you do take notes, please do so only in these pads.

Remember that any notes you take are for your use only, and they are only to be used as an aid for your memory.  Your memory controls.  If you do take notes, be careful not to get so involved in taking notes that you are not listening to the evidence.  Once you are in your deliberations, if there is a disagreement between one juror's notes and another juror's notes, or between one juror's notes and another juror's recollection, you can ask to have the court reporter read back the testimony, or to have that portion of the transcript sent to you, for it is the official court transcript that controls, not any particular juror's notes.

During the course of the trial, exhibits will be received into evidence.  They will be marked by exhibit number.  If there is an exhibit that you are particularly interested in seeing during your deliberations, write down the exhibit number.  At the end of trial, as you begin your deliberations, we will provide each of you with a list of all witnesses who testified during the trial, as well as a copy of all exhibits that have been received in evidence.

### F.  Course of The Trial

We will now begin the trial.  Let me tell you about the trial day.  We will begin each day at 9:30 a.m.  Please be on time.  To help ensure that we start on time, please be in the jury room by 9:00 a.m. at the latest so that we begin without delay.  I will add that a light breakfast will be available in the jury room each morning at 8:45 am.  You're not required to take us up on our hospitality, but in my experience, many jurors do.  The key thing is that nobody be late.  If any of you are late, we will have to wait, for we cannot start unless all of you are here, and all of us—myself, the lawyers, the parties, the witnesses, and your fellow jurors—will have to wait.  And if we lose 10 or 20 minutes every day, we may not be able to get the trial completed on time.  As to the rest of the trial day, we will take a lunch break around 1:00 p.m. and brief mid-morning and mid-afternoon comfort breaks with refreshments provided for you during the mid-afternoon break.

Now, let me tell you how the trial will proceed.  First, we will have opening statements.  Plaintiff will make an opening statement.  Then an attorney for the Defendant will do so.  The opening statements are neither evidence nor argument; they are simply outlines of what the attorneys believe the evidence will show, and they are given to help you follow the evidence as it is presented.

After the opening statements, the Government will present its case.  The Government will call its witnesses, and after each witness testifies, Mr. Hernandez will have an opportunity to examine the witness.

Following the Government's case, the Government will rest.  The Defendant will then present his defense to Government case.  The Defendant will have a right to call his own witnesses to testify, and the Government will have the opportunity to cross-examine them.

After the evidence is completed and all sides have rested, the parties will give their

summations.  This is the opportunity for the parties to summarize the evidence and to give their closing arguments.

Following the summations, I will give you instructions on the law.  You will then, finally, retire to deliberate on your verdict.

You have a tremendously important task as jurors.  It is to determine the facts.  You, and not the court, are the sole judge of the facts.  The Constitution itself recognizes your unique role in our system of justice.  So please, pay careful attention to the witnesses and evidence received at trial, as well as my instructions on the law.

We will now begin with counsel's opening statements.